UNITED STATES of America,
Plaintiff–Appellee,

v.

Dwight Erwin BAKER, Defendant–
Appellant.

No. 93–2486.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 17, 1993.

Decided Feb. 14, 1994.

Counsel who presented argument on behalf of the appellant was John K. Rigg, Des Moines, IA.

Counsel who presented argument on behalf of the appellee was Gary L. Hayward, Des Moines, IA. Additional attorney appearing on the brief was Lester Paff.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

Dwight Erwin Baker appeals his conviction for possessing cocaine base (crack cocaine) and for managing a residence for the purpose of distributing or using crack cocaine in violation of 21 U.S.C. §§ 844 and 856, arguing that evidence seized by Des Moines police while improperly executing a no-knock search warrant should have been suppressed. He also appeals his 180–month sentence, arguing that he was improperly sentenced as a career offender under U.S.S.G. § 4B1.1 because his violation of 21 U.S.C. § 856 is not a "controlled substance offense" for purposes of § 4B1.2(2). We affirm Baker's conviction but agree with his interpretation of § 4B1.2(2) and therefore remand for resentencing.

## I. The Suppression Issue.

By mid–1992, Baker's residence at 1212 Clark Street in Des Moines was a known "crack house." For more than a year, police had conducted on-going surveillance, occasional controlled drug buys, and several searches of the house, both by consent and by warrant. On July 14, 1992, based upon an affidavit by Des Moines narcotics officer Warren Steinkamp reciting that informants had recently made additional controlled buys at the house, Iowa District Court Judge Jack Levin issued another warrant to search 1212 Clark Street. Consistent with the warrant application, the warrant recited:

> 1212 Clark is high drug traffic house. The doors are fortified with 2 by 4 boards and other items. On previous warrants the narcotic unit has received a stolen handgun that was used in a robbery. Gang members also hang out at the house selling drugs. And [sic] no-knock warrant is authorized.

On July 21, after a week of surveilling activities at 1212 Clark, members of the police narcotics, tactical, and "SCAT" units executed the warrant. As police approached the house through an alley, several people gathered around a car fled, and the car sped off. The police encountered Baker on the front porch, arrested him, and seized six "off-white rocks" of crack cocaine on or near his person. Without knocking or announcing the raid, members of the SCAT unit lobbed one distraction stun device through the kitchen window and rolled another through the front door. After the devices exploded, the police stormed inside, secured the people and dogs that were on the premises, and completed their search, seizing additional narcotics, cash, a firearm, and various items of drug paraphernalia.

Prior to trial, Baker moved to suppress this evidence. At the suppression hearing, Steinkamp and another officer described the prior searches of 1212 Clark Street, the probable cause information that was gathered and presented in the July 1992 warrant affidavit, the surveillance and preparations conducted after the warrant issued, the arrest of Baker on the porch, the nature of the explosive distraction devices that were used

without injury in making the no-knock entry, and the manner in which the warrant search was then completed. In addition, Daniel Voogt, a Polk County prosecutor, testified that he reviewed the warrant affidavit's probable cause showing before he and Officer Steinkamp presented the affidavit to Judge Levin and requested a no-knock warrant. Voogt further testified that, although Iowa Code § 808.6 does not expressly authorize no-knock warrants, on "very rare" occasions judges in Polk County will issue no-knock warrants "when you can set out a specific set of circumstances that create, for lack of a better term, an ongoing exigency with a particular place."

Baker presented no evidence at the suppression hearing. One week later, the district court issued a written order denying the motion to suppress. The court reasoned: (i) that there was probable cause to issue the July 14, 1992, search warrant; (ii) that state law and the Fourth Amendment govern whether the warrant was lawfully executed under *United States v. Moore,* 956 F.2d 843, 847 (8th Cir.1992); (iii) that the no-knock provision in the search warrant was invalid because "only the [Iowa] legislature may expand the authority to issue warrants" and it has not done so; (iv) that even if a no-knock warrant may issue under Iowa law, the warrant affidavit did not establish its reasonableness in this case; (v) that the conduct of the police in having a prosecutor review the warrant affidavit and then in relying upon the no-knock warrant was objectively reasonable under *United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984), and *United States v. Livesay,* 983 F.2d 135 (8th Cir.1993); and (vi) that "the use of distraction devices in this instance is of grave concern" but did not violate the Fourth Amendment because "the police reasonably believed the door to the residence was fortified with 2 × 4 boards."

On appeal, Baker argues that the district court's finding that the police reasonably believed the door to 1212 Clark was fortified is clearly erroneous because the police did not conduct adequate surveillance of the premises immediately prior to executing the warrant. He contends that the no-knock

entry was therefore improper, relying upon *United States v. Stewart*, 867 F.2d 581 (10th Cir.1989). His argument is both legally and factually flawed.

Legally, Baker's reliance on *Stewart* is misplaced. In *Stewart*, because state and federal officers jointly conducted the no-knock entry, their actions were governed by 18 U.S.C. § 3109, a federal statute that permits law enforcement officers executing a warrant to forcibly enter a house only after announcing their presence and purpose. Here, the Des Moines police acted without federal involvement, so the suppression issue is governed only by the Fourth Amendment. *See United States v. Maholy*, 1 F.3d 718, 722 (8th Cir.1993). Under the Fourth Amendment, "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant— subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" *Dalia v. United States*, 441 U.S. 238, 257, 99 S.Ct. 1682, 1693, 60 L.Ed.2d 177 (1979).

Two factors support the district court's factual determination that the July 14 warrant was reasonably executed. First, as in *Moore*, the officers acted pursuant to express no-knock authority contained in the July 14 warrant. Although the district court challenged the practice, it is undisputed that Iowa district court judges have interpreted Iowa law as permitting no-knock search warrants.[1] Second, unlike the situation in *Stewart*, the police had particularized, timely information justifying a no-knock entry. In executing a prior warrant, the officers had encountered a barricaded front door that made entry difficult. The informants who made the controlled buys leading to the July 14 warrant reported that the front door had been rebarricaded and that two Doberman Pinschers were inside the house. In these circumstances, the district court's finding that the police reasonably believed the use of

distraction devices was needed to effect a safe entry was not clearly erroneous, and Baker's suppression motion was properly denied.

## II. The Career Offender Issue.

■ Baker appeals the substantially enhanced sentence he received as a career offender. To be sentenced as a career offender under U.S.S.G. § 4B1.1, the offense of conviction must be "a felony that is either a crime of violence or a controlled substance offense." *See* § 4B1.1(2). A *controlled substance offense* is one "prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(2). Omitted from this definition are simple possession drug offenses. Here, the jury acquitted Baker of conspiracy to distribute cocaine base. It convicted him of simple possession of crack cocaine, but that is not a *controlled substance offense* under § 4B1.2(2). Thus, the issue on appeal is whether Baker's § 856 conviction for managing or controlling a drug premises is a predicate drug distribution offense justifying his career offender sentence.

### A.

The district court concluded that a violation of 21 U.S.C. § 856 is a controlled substance offense for career offender purposes because its base offense level is determined under U.S.S.G. § 2D1.8, which in turn refers to "the underlying controlled substance offense." However, *controlled substance offenses* under Part 2D of the Guidelines include possession offenses, whereas *controlled substance offenses* under § 4B1.2(2) expressly exclude possession offenses. Therefore, a cross reference to § 2D1.8 does not solve this problem.

---

1. A police violation of state law does not establish a Fourth Amendment violation. However, the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes. Compliance with state law is also relevant "when the analysis proceeds to the question of admitting unconstitutionally seized evidence under *Leon's* good faith exception to the exclusionary rule," an issue we need not reach in this case. *Maholy*, 1 F.3d at 722.

## B.

The background commentary to § 4B1.1 explains that this section "implements th[e] mandate" of 28 U.S.C. § 994(h). One section of that statute directs the Sentencing Commission to require a sentence at or near the maximum for recidivists who violate specific drug statutes, namely, 21 U.S.C. §§ 841, 952(a), 955, 955a, and 959. *See* § 944(h)(1)(B). Relying upon *United States v. Price,* 990 F.2d 1367 (D.C.Cir.1993), Baker argues that his conviction for violating 21 U.S.C. § 856 cannot be a career offender predicate offense because that statute is not enumerated in § 994(h) and "the Sentencing Commission adopted §§ 4B1.1 & 4B1.2 solely in an effort to fulfill the mandate of 28 U.S.C. § 994(h)." *Id.* at 1368.

The problem with this reasoning is that § 994(h) does not define the *only* crimes for which the Commission may specify a sentence at or near the maximum; it merely declares that the enumerated crimes must be so treated. *See* S.Rep. No. 225, 98th Cong., 2nd Sess. 176 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3359. That suggests, as the court in *Price* acknowledged, that the Commission has authority to include additional predicate offenses in its career offender category by exercising, for example, its broad mandate under § 994(a). *See* 990 F.2d at 1369. Not surprisingly, that is precisely the Commission's response to *Price*—under a proposed amendment, the commentary to § 4B1.1 will be modified to state that this career offender Guideline is based upon the Commission's general authority under § 994(a)–(f), not merely its authority to implement § 994(h). *See* Proposed Amendments to Sentencing Guidelines, Policy Statements, and Commentary, 58 Fed.Reg. 67520, 67532 (1993).

The Commission has generally declared that its Guidelines are issued pursuant to its broad authority under § 994(a). *See* U.S.S.G. Ch. 1, Part A, § 1. Given this and the Commission's proposed amendment to the § 4B1.1 background commentary, we have serious doubts about *Price*'s conclusion, derived solely from the commentary, that the only purpose of the career offender Guideline was to implement § 994(h).[2] If § 4B1.2(2) specifically included § 856 as a predicate career offender offense, as it did prior to a 1989 amendment,[3] we would surely be required to apply that Guideline in accordance with its literal command. *See Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1917, 123 L.Ed.2d 598 (1993). In the absence of that specific reference, we must consider whether Baker's § 856 conviction falls within the more general language defining *controlled substance offense* in the current § 4B1.2(2).

## C.

The government argues that a violation of 21 U.S.C. § 856 is a *controlled substance offense* under the current version of § 4B1.2(2), which is worded generally to include controlled substance manufacturing and distribution offenses but to exclude controlled substance possession offenses. The problem with the government's position is that a § 856 violation can be either—the statute is violated if a building owner knowingly makes his premises available "for the purpose of unlawfully manufacturing, storing, distributing, *or using* a controlled substance." *See* 21 U.S.C. § 856(a)(2) (emphasis added).

The jury acquitted Baker of conspiracy to distribute—the only other charge that was even arguably a drug distribution offense. The verdict convicting him of violating § 856 recited that he maintained, managed or controlled the residence known as 1212 Clark Street "for the purpose of *distributing or using* a controlled substance." (Emphasis added.) That verdict is ambiguous—it does not clarify whether Baker was convicted of a possession § 856 offense or a distribution § 856 offense.

■ When a defendant is convicted by an ambiguous verdict that is susceptible of two

---

2. At least one other circuit has expressed similar doubts. *See United States v. Heim,* 15 F.3d 830, 831–32 (9th Cir.1994).

3. *See* U.S.S.G.App. C ¶ 268.

interpretations for sentencing purposes, he may not be sentenced based upon the alternative producing the higher sentencing range. *See United States v. Owens*, 904 F.2d 411, 415 (8th Cir.1990). That principle has frequently been applied to general verdicts in conspiracy cases, where conspiring to violate different statutes, or to distribute different types of drugs, may entail markedly different sentences. *See United States v. Bounds*, 985 F.2d 188, 194–95 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 135, 126 L.Ed.2d 99 (1993); *United States v. Pace*, 981 F.2d 1123, 1129–30 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993); *United States v. Orozco–Prada*, 732 F.2d 1076, 1083–84 (2d Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 154, 155, 83 L.Ed.2d 92 (1984); *United States v. Quicksey*, 525 F.2d 337, 340–41 (4th Cir.1975), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976); *Brown v. United States*, 299 F.2d 438, 440 (D.C.Cir.), *cert. denied*, 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962). We conclude that this principle is equally applicable in this case. The trial evidence would have supported a jury finding that Baker made his house available either for the distribution of crack cocaine, or merely for its use.[4] Yet the jury verdict did not clarify which § 856 offense it found.

The government also argues that all § 856 offenses are controlled substance offenses for purposes of § 4B1.2(2) because a § 856 offender, at a minimum, has aided and abetted others to use his premises for a distribution offense. However logical that argument may be in theory, § 856 is nonetheless a distinct offense. *See United States v. Sturmoski*, 971 F.2d 452, 461–62 (10th Cir.1992). The government failed to charge Baker with aiding and abetting a distribution offense, and it failed to ask the district court to submit a special interrogatory that would have clarified the factual premise for the jury's § 856 conviction. In these circumstances, Baker's § 856 conviction may not be considered a *controlled substance offense* for purposes of § 4B1.2(2), and therefore he may not be sentenced as a career offender. In light of this conclusion, we need not address the other career offender issue Baker has raised on appeal.

Baker's conviction is affirmed. The judgment of the district court is reversed and the case is remanded for resentencing in accordance with this opinion.

---

4. Because the trial evidence does not permit us to clear up the ambiguity in the verdict, this case is distinguishable from *United States v. Watts*, 950 F.2d 508, 514–15 (8th Cir.1991).