UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael R. DAMERVILLE and Sharon Douglas, Defendants–Appellants.

Nos. 93–3235, 93–3419.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1994.

Decided June 14, 1994.

John W. Vaudreuil, Asst. U.S. Atty. (argued) and Larry Wszalek, Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

Mark E. Colbert (argued), Waunakee, WI and Iris M. Christenson (argued), Madison, WI, for defendants-appellants.

Before PELL, WOOD, Jr., and ESCHBACH, Circuit Judges.

PELL, Circuit Judge.

Michael Damerville and Sharon Douglas entered guilty pleas to a one-count indictment charging them with conspiring with others to violate 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. Damerville was sentenced as a career offender. He argues that the career offender enhancement should not apply to those convicted of conspiracy to commit a controlled substance offense. Douglas, who was sentenced under § 841(b)(1)(D), argues that she should have been sentenced according to the penalty provision of § 841(b)(4).

### I.

The conspiracy began when Don Burkhalter, an inmate at the Federal Correctional Institution in Oxford, Wisconsin, approached fellow inmate Robert Kripps, the boyfriend of Douglas, and asked him to assist in smuggling balloons filled with marijuana into the prison. Burkhalter and Kripps agreed that Kripps would receive one-quarter of the shipment, Burkhalter would receive one-quarter, and Michael Damerville would receive one-half.

Kripps solicited Douglas to bring the marijuana into the prison. After she agreed, Kripps gave Douglas' name and address to Burkhalter and requested that her real name not be used. Meanwhile, Damerville spoke with Tammie and David Blackburn in Des Moines, Iowa. Their taped conversation revealed references to "the thirty-five from Rick," which David Blackburn verified he had received. Damerville requested confirmation that Tammie Blackburn had received a letter containing Douglas' address.

On August 21, 1992, a package, addressed to "Shannon Smith" and bearing a sender's name of "David Blackburn," was shipped "priority overnight" from the Des Moines Federal Express office to the Madison, Wisconsin office. Due to an incorrect recipient address, the package was not delivered. On August 23, Damerville informed David Blackburn that "the girl in Wisconsin" had not received the package. On August 26, Damerville asked Tammie Blackburn to trace the package. The next day Damerville spoke with David Blackburn, who indicated that the package had not yet been traced.

On August 28, the package arrived at the Federal Express Headquarters in Memphis, Tennessee. On August 29, the package was opened for the purpose of categorizing its misdirected contents. The package contained a plumbing-type pipe, a pipe ring, crumpled newspapers, and thirty-five balloons filled with marijuana. The package was turned over to Federal Express security officers. On that same day, David Blackburn furnished Damerville with the package number. Advising Kripps that the package was in Madison, Damerville gave him its number. On August 31, Douglas went to the Federal Express office in Madison where she was informed that the package was in Memphis and that it contained marijuana. She conveyed this information to Kripps when she visited him at FCI–Oxford later that evening. Kripps passed the news to the others at the prison. They did not believe him.

Damerville spoke with the Blackburns. They confirmed that the package had been seized and that Blackburn had used his real name on the package. The thirty-five balloons were subsequently turned over to the Drug Enforcement Agency and found to contain 17.2 grams of marijuana.

The indictment charged Sharon Douglas and Robert Kripps with conspiracy to distribute marijuana. In a superseding indictment Michael Damerville, David Blackburn,

and Tammie Blackburn were added as co-defendants.

## II.

■ Damerville was convicted pursuant to 21 U.S.C. § 846 for conspiring to commit an offense involving a controlled substance. The district court found that Damerville was a career offender under United States Sentencing Guideline § 4B1.1 and gave him a seventy-seven month prison sentence. A defendant who is convicted of a felony controlled substance offense and has at least two prior felony convictions of a controlled substance offense is a career offender. USSG § 4B1.1.[1] A "controlled substance offense" is

> an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance ... or the possession of a controlled substance ... with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(2). "Aiding and abetting, conspiring and attempting to commit" a controlled substance offense is within the guidelines' definition of offenses that may be considered for career offender enhancement under § 4B1.1 USSG § 4B1.2, comment. (n. 1); *see Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (commentary to the guidelines that interprets or explains a guideline is authoritative unless it violates the Constitution).

Damerville challenges the Sentencing Commission's authority to include "conspiracy" to commit a controlled substance offense among the offenses that qualify for the career offender enhancement. He relies on *United States v. Price,* 990 F.2d 1367 (D.C.Cir.1993). In *Price* the District of Co-

lumbia Circuit determined that, by including conspiracies among the offenses that qualify a defendant for career offender status, the Sentencing Commission exceeded the mandate of 28 U.S.C. § 994(h). The Background commentary to § 4B1.1 states:

> 28 U.S.C. § 994(h) mandates that the Commission assure that certain "career" offenders, as defined in the statute, receive a sentence of imprisonment "at or near the maximum term authorized." Section 4B1.1 implements this mandate.

USSG § 4B1.1, comment. (backg'd.). Section 994(h) applies to offenses "described in section 401 of the Controlled Substances Act (21 U.S.C. 841)." 28 U.S.C. §§ 994(h)(1)(B)[2], (h)(2)(B). The District of Columbia Circuit determined that conspiracies to violate offenses specified in § 994(h) are not the offenses "described in" those sections; therefore, a conspiracy to violate § 841 is not the same as a violation of § 841 for purposes of applying § 994(h), and a defendant convicted of conspiracy to violate § 841 is not the offender described in § 994(h). The court further noted that, because § 994(a) grants broad power to the Sentencing Commission, "the Commission may well be free under § 994(a) to specify equally long terms for defendants not covered by § 994(h)." *Price,* 990 F.2d at 1369. But the court specified that the Sentencing Commission had not used § 994(a) as its authority to include conspiracies. Because the Sentencing Commission could not rely upon § 994(h) to include conspiracies and did not state its reliance upon § 994(a), it lacked the authority to apply the career offender provisions to those convicted of conspiracy to violate § 841.

The reasoning of the District of Columbia Circuit in *Price* has been criticized by the

---

**1.** The career offender provision states:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense....

**2.** Section 994(h)(1)(B) provides in relevant part: The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and
>   (1) has been convicted of a felony that is ...
>   (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841)
>   ...

Eighth and Ninth Circuits.[3] *United States v. Baker*, 16 F.3d 854 (8th Cir.1994); *United States v. Heim*, 15 F.3d 830 (9th Cir.1994). The Ninth Circuit concluded in *Heim* that the District of Columbia Circuit had read the commentary of § 4B1.1 too restrictively. *Heim*, 15 F.3d at 832. The court reasoned that the guidelines "implemented," but did not rely upon § 994(h) as the sole legal authority for promulgating the career offender guidelines. Taking into account the legislative history of § 994(h), the court expressed the view that § 994(h) was not intended to be a ceiling for establishing career offender guidelines.[4] Similarly, in *Baker* the Eighth Circuit determined that under the broad power of § 994(a), the Sentencing Commission had the authority to include conspiracies in its treatment of career offenders. The court also noted the Sentencing Commission's response to *Price* in the form of a proposed amendment: the proposed modified commentary to § 4B1.1 reflects the Sentencing Commission's intent to rely upon its general guideline promulgation authority under § 994(a) to include conspiracy offenses under the career offender guideline. *See* Proposed Amendments to Sentencing Guidelines, Policy Statements, and Commentary, 58 Fed. Reg. 67521, 67532 (1993).

■ We agree that the Sentencing Commission had the authority to include conspiracy as an offense subject to treatment by the career offender provisions pursuant to its general authority under § 994(a). The guidelines identify the Sentencing Commission's broad general powers under § 994(a). USSG Ch. 1, Pt. A, intro. comment. (n. 1) ("The guidelines and policy statements promulgated by the Commission are issued pursuant to Section 994(a) of Title 28, United States Code."). The authority granted by § 994(a) is implicit in *all* the provisions of the guidelines. Reference in the commentary to § 994(h) as a specific source of authority does not preclude the authority of § 994(a). Congress gave the Sentencing Commission the power to implement § 994(h). Section 994(h) does not define the only crimes that require the application of the career offender provisions, but rather it declares that those recidivists convicted of the enumerated crimes must receive a sentence at or near the maximum. *Baker*, 16 F.3d at 857 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 176 (1983)); *see also Mistretta v. United States*, 488 U.S. 361, 376, 109 S.Ct. 647, 657, 102 L.Ed.2d 714 (1989). Section 994(h) provides the minimum obligation of the Commission and does not prohibit the inclusion of additional offenses that qualify for such treatment.

The penalty for conspiracy to violate § 841 is the same as for a violation of § 841. *See* 21 U.S.C. § 846 ("Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."). Congress required the Sentencing Commission to formulate guidelines so as to "reflect the seriousness of the offense," 18 U.S.C. § 3553(a)(2); *see Mistretta*, 488 U.S. at 374, 109 S.Ct. at 656, and conspiracy is, in some contexts, considered as or more serious than the predicate offense. *See Iannelli v. United States*, 420 U.S. 770, 778–779, 95 S.Ct. 1284, 1290–1291, 43 L.Ed.2d 616 (1975); *United States v. Lechuga*, 994 F.2d 346, 347 (7th Cir.) (en banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 482, 126 L.Ed.2d 433 (1993). As the government points out, the gravity of a conspiracy offense is also reflected in the *Pinkerton*

---

**3.** In an earlier case the First Circuit held that "conspiracy convictions can serve as predicate offenses under the career offender provisions of the federal sentencing guidelines." *United States v. Fiore*, 983 F.2d 1 (1st Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1830, 123 L.Ed.2d 458 (1993). *Fiore* did not address the authority of the Sentencing Commission to include conspiracies. Instead the court focused on the object of the conspiracy as the determining factor for whether a defendant had committed a "crime of violence."

**4.** The Senate Report notes that "[Section 994(h) is] not necessarily intended to be an exhaustive list of types of cases in which the guidelines should specify a substantial term of imprisonment, nor of types of cases in which terms at or close to authorized maxima should be specified." *Heim*, 15 F.3d at 832 (quoting S.Rep. No. 98–225, 98th Cong., 1st Sess. 307 (1983), in 1984 U.S.C.C.A.N. 3182, 3359).

doctrine which allows a conspirator to be held responsible for the acts of others. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Given the broad reach of § 994(a), we hold that the Sentencing Commission properly exercised its authority in including conspiracy to violate § 841 among the offenses that qualify a defendant for career offender status.

### III.

■ At her guilty plea hearing, Douglas disputed the application of the maximum penalty for her offense. The government maintained that the maximum penalty was found in 21 U.S.C. § 841(b)(1)(D), a felony provision. Douglas argued that 21 U.S.C. § 841(b)(4) should apply; application of § 841(b)(4) leads to the imposition of the penalty provided in 21 U.S.C. § 844. A conviction under § 844 is a misdemeanor. Although Douglas received only a three-year term of probation, she now has a felony conviction on her record.

The court deferred its ruling on the application of § 841(b)(4) and presented Douglas with two choices: she could enter a plea of guilty as planned and then brief the issue of the applicability of § 841(b)(4), knowing that the higher penalty might remain in place, or she could postpone her guilty plea until after briefing and a determination by the court. Douglas chose to enter her guilty plea before resolution of the issue and the court proceeded on the assumption that the higher penalties could apply.

After Douglas and the government briefed the applicability of § 841(b)(4), the court determined that it did not apply to Douglas and sentenced her on the basis of the felony indictment. The court found that 17.2 grams was not a small amount of marijuana for purposes of the statute, particularly when distributed within a penal institution. The court determined that § 841(b)(4) was not intended to apply to a situation involving a penal institution, and found it significant that the drugs were intended for a number of people.

Douglas argues that "amount" should be determined by weight, and the context of the distribution should be used only for determining a particular sentence from the guideline range. She points to the absence in the statute of a reference to the special situation of prison as an indication that context is not something to be taken into consideration when determining the applicable penalty provision.

The parties agree that the conspiracy involved 17.2 grams of marijuana. The issue in dispute is whether 17.2 grams constitutes a "small amount" for purposes of the statute. The application of the law to the facts is a legal question that we review *de novo. United States v. Prevatte,* 16 F.3d 767, 779 (7th Cir.1994).

Section 841 contains, for our purposes, two parts. Part (a) defines the crime. Part (b) describes the penalties for violating part (a). *See United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989) (§ 841 is a penalty provision having "nothing to do with the substantive elements of the underlying offense"). The penalties for possessing with intent to distribute marijuana vary according to the amount of marijuana in question. For the most part, Congress has designated the distribution of specific amounts of marijuana to carry distinct penalties. *See, e.g.,* 21 U.S.C. §§ 841(b)(1)(A)(vii), (b)(1)(B)(vii), (b)(1)(D). Section 841(b)(4), on the other hand, provides:

> Notwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18.

21 U.S.C. § 841(b)(4). Douglas argues that she should be treated as provided in § 844 because 17.2 grams is a "small amount" for purposes of the statute and she was to receive no remuneration for her participation in the crime.

■ Although Congress specified penalties for the distribution of certain amounts of marijuana, it refrained from identifying the amount that allows for the most lenient penalty, that as provided in § 844. "Small amount" is not defined in the statute, nor is it addressed in the legislative history of the

Controlled Substances Act. Congress left "small amount" open for the courts to decide, indicating that the determination should not be based purely on weight. If weight were the only consideration, then the statute would have specified a particular weight instead of referring to a "small amount." We agree that thirty-five balloons of marijuana weighing 17.2 grams is not a "small amount" of marijuana to be smuggled into a federal prison. Although that same amount might be considered "small" when distributed in the general community, thirty-five balloons of marijuana, intended for use by three people, relative to the availability of drugs in a prison is not, for penalty purposes, "small." We hold that the district court properly applied § 841(b)(1)(D) in sentencing Douglas.

Accordingly, for the reasons stated herein, the convictions and sentences of both defendants are affirmed.

AFFIRMED.