# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1754

_____

Carl Franklin Cook,                          *
                                             *
         Appellee,                       *
                                             *
    v.                                      *
                                             *
David Gibbons, Prosecuting                   *
Attorney, Pope County,                       *
                                             *
         Defendant,                      *
                                             *    Appeals from the United States
Johnny Casto, Agent, 5th Judicial            *    District Court for the Eastern
District Drug Task Force,                     *    District of Arkansas.
                                             *
         Appellant,                      *    [UNPUBLISHED]
                                             *
William Kelly, Agent, 5th Judicial           *
District Drug Task Force; Scott              *
Harper, Agent, 5th Judicial District        *
Drug Task Force,                             *
                                             *
         Defendants,                     *
                                             *
Dale Swesey, Criminal Investigator,          *
Arkansas State Police,                       *
                                             *
         Appellant,                      *
                                             *
Richard Hoffman, Criminal Investigator,      *
Arkansas State Police; Hoyt Harness,         *
Criminal Investigator, Little Rock           *

CID; Mark Blankenship, Criminal     *
Investigator, Little Rock CID,     *
    *
        Defendants,     *
    *
Kevin Webb, Criminal Investigator,     *
Little Rock CID,     *
    *
        Appellant,     *
    *
Mark Thompson, Criminal Investigator,     *
Jonesboro CID,     *
    *
        Defendant,     *
    *
Nick Castro, Criminal Investigator,     *
Fort Smith CID,     *
    *
        Appellant,     *
    *
Robert Speer, Arkansas Highway Police,     *
    *
        Defendant,     *
    *
Jeff Crow, Arkansas Highway Police;     *
Jeff Jester, Arkansas Highway Police;     *
Bobby Alcon, Arkansas Highway     *
Police; Joel Eubanks, Arkansas     *
Highway Police, Harrison, Arkansas,     *
    *
        Appellants,     *
    *
Charlie Edmondson, Arkansas Highway     *
Police, Fort Smith, Arkansas,     *
    *
        Defendant,     *
    *

Bryan Davis, Arkansas Highway Police, *
Fort Smith, Arkansas; Kevin *
Richmond, Fort Smith Special *
Operations, *
                 *
          Appellants, *
                 *

Jay Winters, Sheriff, Pope County; *
Caldwell, Deputy Sheriff, Pope *
County; Kyle Drown, Sgt., Arkansas *
State Police; Johnathan Freeman, *
Pottsville Police Department; David *
Hyden, Sgt., Arkansas State Police; *
Dwayne Luter, Sgt., Arkansas State *
Police; Charles Martin, Atkins Chief of *
Police; Rick Martin, Pottsville Chief of *
Police; Chris Ridenhour, Russellville *
Police Department; Tim Whittenberg, *
Atkins Asst. Chief of Police; Mars, *
Colonel Coordinator for the Arkansas *
State Police S.W.A.T. and/or Assault *
Team and/or Entry Team, for *
the State of Arkansas sued in his *
individual capacity; Scott Walls, *
Criminal Investigator for Little Rock *
CID, Little Rock, Arkansas sued in his *
individual capacity; Jeff Chandler, *
Assistant Prosecuting Attorney for the *
Fifth Judicial District of Arkansas sued *
in his individual capacity; Ben Cross, *
Arkansas State Police; Jimmy Casto, *
Criminal Investigator for Russellville *
Police Department and Fifth Judicial *
Drug Task Force sued in his individual *
capacity, *
                 *
          Defendants. *

No. 07-1785

Carl Franklin Cook,                          *
                                         *
     Appellee,      *
                                         *
     v.             *
                                         *
David Gibbons, Prosecuting                   *
Attorney, Pope County; Johnny                *
Casto, Agent, 5th Judicial District          *
Drug Task Force; William Kelly,              *
Agent, 5th Judicial District Drug            *
Task Force; Scott Harper, Agent, 5th         *
Judicial District Drug Task Force;           *
Dale Swesey, Criminal Investigator,          *
Arkansas State Police; Richard               *
Hoffman, Criminal Investigator,              *
Arkansas State Police; Hoyt Harness,         *
Criminal Investigator, Little Rock CID;      *
Mark Blankenship, Criminal                   *
Investigator, Little Rock, CID; Kevin        *
Webb, Criminal Investigator, Little          *
Rock CID; Mark Thompson, Criminal            *
Investigator, Jonesboro CID; Nick            *
Castro, Criminal Investigator, Fort          *
Smith CID; Robert Speer, Arkansas            *
Highway Police; Jeff Crow, Arkansas          *
Highway Police; Jeff Jester, Arkansas        *
Highway Police; Bobby Alcon,                 *
Arkansas Highway Police; Joel                *
Eubanks, Arkansas Highway Police,            *
Harrison, Arkansas; Charlie                  *
Edmondson, Arkansas Highway                  *

Police, Fort Smith, Arkansas;                        *
Bryan Davis, Arkansas Highway                        *
Police, Fort Smith, Arkansas; Kevin                  *
Richmond, Fort Smith Special                         *
Operations; Jay Winters, Sheriff,                    *
Pope County; Caldwell, Deputy Sheriff,               *
Pope County; Kyle Drown, Sgt.,                       *
Arkansas State Police; Ben Cross,                    *
Arkansas State Police; Johnathan                     *
Freeman, Pottsville Police Department;               *
David Hyden, Sgt., Arkansas State                    *
Police; Dwayne Luter, Sgt., Arkansas                 *
State Police,                                        *
                                                     *
           Defendants,                               *
                                                     *
Charles Martin, Atkins Chief of                      *
Police,                                              *
                                                     *
           Appellant,                                *
                                                     *
Rick Martin, Pottsville Chief of                     *
Police; Chris Ridenhour, Russellville                *
Police Department; Tim Whittenberg,                  *
Atkins Asst. Chief of Police; Jimmy                  *
Casto, Criminal Investigator for                     *
Russellville Police Department and                   *
Fifth Judicial Drug Task Force sued                  *
in his individual capacity; Mars,                    *
Colonel Coordinator for the Arkansas                 *
State Police S.W.A.T. and/or Assault                 *
Team and/or Entry Team, for the State                *
of Arkansas sued in his individual                   *
capacity; Scott Walls, Criminal                      *
Investigator for Little Rock CID, Little             *
Rock, Arkansas sued in his individual                *
capacity; Jeff Chandler,                             *

Assistant Prosecuting Attorney      *
for the Fifth Judicial District of      *
Arkansas sued in his individual      *
capacity,      *

             *

        Defendants.      *

_____

Submitted: September 26, 2008
Filed: January 20, 2009

_____

Before MURPHY, BYE, and BENTON, Circuit Judges.

_____

PER CURIAM.

Carl Cook filed this 42 U.S.C. § 1983 action against thirty-four individuals, most of whom were members of an Arkansas State Police (ASP) SWAT team or the Fifth Judicial Drug Task Force (DTF), and he claimed, in relevant part, that they used excessive and unreasonable force in the execution of a no-knock search warrant at his home on July 13, 1999, needlessly and maliciously damaging his residence and personal property, in violation of his rights under the Fourth and Fourteenth Amendments. After the district court disposed of the parties' motions for dismissal or summary judgment, ten law-enforcement officers--DTF agent Johnny Casto; ASP SWAT team commander Dale Swesey; ASP officers Kevin Webb, Nick Castro, Jeff Crow, Jeff Jester, Bobby Alcon, Bryan Davis, Kevin Richmond, and Joel Eubanks-- appeal the denial of their motions for summary judgment based on qualified immunity (No. 07-1754). In addition, in a consolidated appeal (No. 07-1785), City of Atkins, Arkansas, Chief of Police Charles Martin challenges the denial of his motion for

summary judgment based on qualified immunity.[1]  For the reasons that follow, we reverse and remand in both appeals.

A district court's pretrial denial of qualified immunity is an immediately appealable interlocutory order to the extent the denial turns on an issue of law; appellate jurisdiction is limited to determining whether, viewing the facts in the light most favorable to the plaintiff, the defendant violated the plaintiff's clearly established constitutional or statutory rights, of which a reasonable person would have known. See Walker v. City of Pine Bluff, 414 F.3d 989, 991-92 (8th Cir. 2005) (when district court has denied qualified immunity on ground that material facts are disputed, reviewing court may not review sufficiency of any evidence that is disputed).  It is well settled that the Fourth Amendment protects against unreasonable or unnecessarily destructive searches and seizures.  See Ginter v. Stallcup, 869 F.2d 384, 388 (8th Cir. 1989) (per curiam).  On the other hand, "officers executing search warrants on occasion must damage property in order to perform their duty."  See Dalia v. United States, 441 U.S. 238, 258 (1979) (manner in which warrant is executed is subject to later judicial review as to its reasonableness).  Thus, the question before this court is whether the facts, viewed in a light most favorable to Cook where disputed, show appellants acted objectively reasonably in executing the no-knock search warrant on July 13, 1999.  See Anderson v. Creighton, 483 U.S. 635, 641 (1987) (qualified immunity analysis does not involve inquiry into official's subjective intent; official's subjective beliefs about search are deemed irrelevant).

The summary judgment evidence, viewed most favorably to Cook where genuinely in dispute, established the following. On July 12, 1999, DTF investigators arranged for a confidential informant (CI) to go to Cook's residence to purchase methamphetamine using marked bills and wearing a body wire and recording device

_____

[1]Pope County Sheriff Jay Winters is the only defendant who did not appeal the denial of his motion for summary judgment.

to enable investigators who were conducting surveillance nearby to monitor the transaction. At some point, Cook was advised by Sandra Burris, with whom he resided, that she could hear his conversation with the CI on a police scanner, after which Cook searched the CI, who had been able to remove the body wire and recording device, but not a piece of tape. During the ensuing hours, Cook questioned the CI and threatened him verbally and physically with a machete or sword. Both eventually left the premises in Cook's vehicle, without being observed by the surveillance team, and Cook released the CI, who contacted the investigators in the early morning hours on July 13. Cook returned home, where he and Burris rapidly packed and left, again undetected by law enforcement. Later in the morning on July 13, 1999, officers obtained a no-knock search warrant to look for the recording device, the body wire, the buy money, and methamphetamine. They believed that Cook remained at his residence, and, based on information furnished by the CI, that he was armed and dangerous. Further, a prior search of Cook's property had revealed firearms hidden in a "trap wall"; Cook had a history of keeping exotic animals (e.g., a lion); and he had a history of refusing to submit willingly to arrest.

DTF officers and ASP SWAT team members assembled and set up a command post near Cook's residence, to secure the residence, to apprehend Cook, and to execute the search warrant. After unsuccessful attempts were made to contact Cook or someone in the residence by phone, two officers saw what appeared to be movement in the house. SWAT team commander Swesey, believing that Cook was in the residence and aware of the officers' presence, ordered a "high-risk" entry. The breaching team (Davis, Castro, and Richmond) introduced chemical agents (tear gas or oleoresin capsicum (OC) gas) and diversionary devices (flash grenades or "flash bangs") into the residence in the early afternoon, through a bedroom window and a living room window, and thereafter rammed the side door. The entry team (Webb, Crow, Eubanks, Jester, and Alcon) then went into the residence and conducted a protective sweep, using additional diversionary devices in some areas of the residence, including in the attic, before concluding after about thirty minutes that no one was

present. Some six to ten devices (OC gas and flash bangs combined) were used before and after entry. Swesey described the residence as a "typical doper house," meaning it was cluttered and unkempt, with piles of clothes everywhere and dishes and food left out. The diversionary devices had scorched some of the floors and personal property, and at least one small fire broke out. After the SWAT team finished its protective sweep, DTF agent Casto, Pope County Sheriff Jay Winters, and others conducted a search of the premises. Swesey testified he did not observe a large amount of damage aside from general disarray and a ladder stuck in the ceiling.

During the entry and search, two windows and the latches on a pair of doors were broken. The contents of a trash can were dumped into a washing machine, and laundered clothes were removed and left on the floor. The ceiling was damaged, some wires were melted, and a ladder which had been used to gain access to the attic was left protruding into the ceiling. One hole had been knocked in a wall in a closet or storage area. Two framed family photographs had been damaged after falling off the wall or a shelf, and several collectable dolls had been broken. Clothing piled on the floor had been trampled, some over scorched spots on the floor. The beds in Burris's children's rooms had been overturned. A personal computer had been sprayed with foam (apparently to subdue a fire) and was destroyed. A wicker chair was destroyed when an object went through it, and a crossbow arrow was lodged into the living room wall. Two panels of insulation were torn off the outside of the residence where there had been no siding. In addition, a snake survived the breach and entry of the residence, but a ferret did not. Further, when Burris returned to the residence a week later, she found the white dove she kept in a cage on the front porch had died, perhaps of heat stroke, and she also found her dog lying dead in the driveway.

Chief Martin attested that he was asked to be present at Cook's residence when the search was executed, but he did not participate in the planning or execution of the search warrant or the initial entry of the residence. Those defendants, including Martin, who attested that they were not involved in searching for items further attested

that they did not purposely or maliciously destroy any property, or observe others doing so; other defendants attested that they were involved in searching for items, and also attested that they did not purposely or maliciously destroy any property, or observe others doing so.

The searching officers did not find the body wire, the buy money, firearms, or any methamphetamine, but they did locate the recording device. Cook was apprehended a few days later and eventually he was convicted of drug, conspiracy, and theft offenses. See Cook v. State, 68 S.W.3d 308 (Ark. Ct. App. 2002).

We first note that Cook did not directly refute defendants' evidence that Captain Martin was uninvolved in causing any unnecessary property damage and that Martin had no authority to direct the actions of others. The district court concluded, however, that there was a genuine issue of fact concerning the extent of Martin's involvement in the search, a conclusion not reviewable on interlocutory appeal. See Johnson v. Jones, 515 U.S. 304, 313 (1995); Walker v. City of Pine Bluff, 414 F.3d 989, 991 (8th Cir. 2005). After our review of the record we conclude that Martin is entitled to qualified immunity for the same reasons as the other officers alleged to have been involved in the search.

We conclude that the law-enforcement officers, armed with a valid no-knock search warrant, initially acted reasonably on their belief that Cook was armed and dangerous, given the events that transpired with the CI the night before and morning of the search, given Cook's history of owning a lion and having significant numbers of firearms and storing some of them within the walls in trap doors, and given that they did not see him leave his residence. In other words, it was not "unnecessarily destructive" and was thus reasonable for the breach and entry teams to have introduced OC gas and flash grenades, apparently breaking two windows in the process, before ramming a side door and thereby damaging latches. See Hummel-Jones v. Strope, 25 F.3d 647, 650, 653 (8th Cir. 1994) (how best to proceed in

performing search is generally left to discretion of officers executing warrant, but even valid warrants must be executed in reasonable manner); United States v. Baker, 16 F.3d 854, 855-56 (8th Cir. 1994) (officers' use of distraction stun device, without knocking and announcing, was needed to effect safe entry and therefore reasonable where officers possessed information that front door was barricaded and that two Doberman Pinschers were inside); Ginter, 869 F.2d at 388-89 (starting fire to force suspect, reasonably believed to be armed and dangerous murderer, out of house was not unnecessarily destructive). Further, Cook did not refute defendants' evidence that once the residence was breached, it took the entry team an additional thirty minutes to determine no one was present, and we conclude that an objectively reasonable officer, presented with the facts of this situation, could have thought it necessary to tear through the ceiling to access the attic, to use additional diversionary devices in the attic, and to make a hole in one wall to be sure that no persons or weapons were present.

With respect to any damage Cook complained of--e.g., the broken collectable dolls, the damaged wicker chair, and the arrow lodged in the wall--even assuming in Cook's favor that this destruction occurred during the search, rather than during the breach and entry sweep, we conclude that Cook failed to create a genuine issue as to whether a reasonable officer would have known his conduct was unnecessarily destructive, so as to violate the Fourth Amendment. First, there was unrefuted evidence that the residence was a mess before the officers attempted entry, which would have made it difficult for officers to conduct a thorough search without upsetting or damaging property. Second, the amount of destruction was not so excessive as to be inconsistent with an objectively reasonable officer's execution of the authorized search for the recording device, body wire, buy money, and drugs, especially given the facts the officers knew about Cook. Third, dumping trash and emptying closets and drawers are activities that are reasonably necessary to conducting a thorough search for the items identified in the warrant. See DeArmon v. Burgess, 388 F.3d 609, 610-11 (8th Cir. 2004) (affirming grant of qualified

immunity to officers, sued under § 1983 for Fourth and Fourteenth Amendment violations, who during the course of executing search warrant broke entry doors and locks on interior doors, damaged drywall and furniture, and seized firearm, doorknobs and locks, photographs, personal papers, and jewelry); Liston v. County of Riverside, 120 F.3d 965, 979 (9th Cir. 1997) (reversing, in part, grant of qualified immunity on Fourth Amendment claim of unnecessary destructiveness, because record was unclear whether some property damage occurred after officers learned they were in wrong house; noting that if officers had engaged in complained-of conduct--ransacking home, dumping garbage on floor, removing items from drawers and closets, destroying backyard fence, and digging up backyard--before they knew they were in wrong home, "the officers could have reasonably believed, under [existing] precedents, that the way they conducted the search was lawful"); Tarpley v. Greene, 684 F.2d 1, 9 (D.C. Cir. 1982) (destruction of property is not, in and of itself, evidence of unreasonableness or of Fourth Amendment violation, but destruction of property that is not reasonably necessary to execute a search warrant effectively may violate the Fourth Amendment); cf. San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 965-66, 974 (9th Cir. 2005) (affirming denial of qualified immunity to officers who caused significant damage to "truckloads" of personal property for purpose of establishing sentencing enhancement related to Hells Angels symbols; examining totality of circumstances and holding it would be clear to reasonable officer that his conduct was unlawful in situation he confronted because it was not reasonably necessary to effectuate performance of officer's duties).

With regard to the dead animals, Cook submitted no evidence suggesting that the officers did anything intentional to harm or kill any of the pets, at least one of which may have died because it was left unattended on the porch in a cage for a week in July. Cf. San Jose Charter, 402 F.3d at 977-78 (killing of dogs would violate Fourth Amendment if officer knew of presence of dogs on property and failed to consider method of subduing them besides killing them).

Finally, Cook's constitutional claims arise under the Fourth rather than the Fourteenth Amendment, see Albright v. Oliver, 510 U.S. 266, 273-74 (1994), and in any event there is no Fourteenth Amendment violation for a deprivation of property without due process if an adequate post-deprivation remedy is afforded by the state, and Cook has made no showing of outrageous, conscience-shocking conduct, see DeArmon, 388 F.3d at 611-12; Weiler v. Purkett, 137 F.3d 1047, 1051 (8th Cir. 1998) (en banc).

Accordingly, we reverse and remand with instructions for the district court to grant summary judgment to appellants based on qualified immunity.

_____