Lee Marvin COLEMAN *v.* STATE of Arkansas

CR 91-267                                        826 S.W.2d 273

Supreme Court of Arkansas
Opinion delivered March 23, 1992

*William R. Simpson, Jr.*, Public Defender, by: *Thomas B. Devine*, Asst. Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was charged as a habitual offender with possessing cocaine with the intent to deliver and with possessing marijuana and drug paraphernalia with intent to use. He filed a motion to suppress the evidence of these crimes that was seized from his residence in a nighttime search. The basis of the motion was that the supporting affidavit did not state sufficient facts for the issuance of a nighttime search warrant. The trial court denied the motion. Appellant then entered conditional pleas of guilty and was sentenced to a total of fifty years in prison. He appeals from the denial of the motion to suppress. *See* A.R.Cr.P. Rule 24.3(b). We affirm the ruling of the trial court.

An affidavit for a search warrant must set out facts showing reasonable cause to believe that circumstances exist that justify a nighttime search. Those circumstances include: (a) the place to be searched is difficult of speedy access, or (b) the objects to be seized are in danger of imminent removal, or (c) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy. A.R.Cr.P. Rule 13.2(c); *State* v. *Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991). In reviewing a trial court's ruling on a motion to suppress because of an alleged insufficiency of the affidavit, we make an independent determination based upon the totality of the circumstances and reverse the trial court's ruling only if it is clearly against the preponderance of the evidence. *State* v. *Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991).

The two and one-half page affidavit, which was prepared by using a word processor with a memory bank, stated that the Little Rock Police Department had received three reports that appellant was selling drugs in Little Rock, and in addition, the police had received three reports that drugs were being sold in the house located at 21 Halifax Court. The affidavit stated that on January 24, 1991, the affiant, a detective, was contacted by a reliable informant who said that appellant possessed cocaine and was distributing it from his residence at 21 Halifax Court. The affidavit additionally said that after dark on the same date the informant purchased cocaine from the appellant at 21 Halifax

Court, that the cocaine was packaged in a clear plastic bag, and that the drugs located in the house were "packaged and maintained in a manner that [their] destruction or removal can be easily accomplished." Finally, the affidavit stated that the affiant had been to the residence, and it "is so situated that the approach of the officers serving this warrant can readily be detected."

Our cases have consistently held that a factual basis must be stated in the affidavit, or in sworn testimony, before a nighttime search warrant may be validly issued. *See, e.g., State* v. *Martinez*, 306 Ark. 353, 811 S.W.2d 319 (1991). The appellant argues that the affidavit in this case contains only conclusory, not factual, statements. He contends that this case is similar to *Garner* v. *State*, 307 Ark. 353, 820 S.W.2d 446 (1991), in which we held that the affidavit did not contain a sufficient factual statement when the affiant only made check marks on a form that quoted the language of A.R.Cr.P. Rule 13.2(c), which sets out the three circumstances that justify a nighttime search. The appellant argues that the only difference is that the affiant in this case used a word processor with a memory bank rather than a printed form with places for check marks. The appellant's argument is valid with regard to the language generated by the word processor's memory bank that says the residence "is so situated that the approach of the officers serving this warrant can be readily detected." It is regrettable that the affiant used only the language stored in the computer memory bank because, in fact, he knew that the residence was located on a cul-de-sac with only one way of entering, and the affiant had been informed that the appellant watched for cars approaching his house and that he had a gun. Therefore, the only safe way for the police to serve the warrant was to approach the house under cover of darkness.

However, the affidavit did specify that "after dark" on that very night an informant had purchased cocaine from the appellant, that the purchase was made inside appellant's residence at 21 Halifax Court, that the cocaine purchased was packaged in a clear plastic bag, that cocaine was "now being concealed" there, that appellant "was in possession of and was distributing cocaine from the residence," and that the drugs located there were "packaged and maintained in a manner that [their] destruction or removal can be easily accomplished." The last phrase is a computer generated phrase, and if it were all the information that

was contained in the affidavit, there would be no difference between this case and *Gardner* v. *State, supra,* the case where the affiant simply made the check marks. However, in this case, in addition to the rote use of the computer generated phrase, the affiant set out a number of pertinent facts.

■ The judge who issued the warrant knew that the affidavit was presented to him at 9:02 p.m. and, from the information contained in the affidavit, he had reasonable cause to believe that an informant had purchased cocaine from the appellant earlier that same night, and the cocaine was packaged in a clear plastic bag. He had reasonable cause to believe that, at that time, the appellant had additional drugs inside his residence and that those drugs were packaged so that they could be easily destroyed or removed. In a somewhat similar case, *Harris* v. *State,* 262 Ark. 506, 558 S.W.2d 143 (1977), the issuing judge knew from the affidavit a reliable informant had stated that the appellant had been involved in a crime, that evidence of the crime was inside appellant's house and could be readily disposed of. We upheld the issuance of the search warrant. Similarly, in this case we cannot say that the ruling of the trial court was clearly erroneous.

Affirmed.

NEWBERN, J., dissents.

DAVID NEWBERN, Justice, dissenting. The majority opinion admirably recognizes that the boiler plate, computer generated reference to the residence to be searched was insufficient to permit a nighttime intrusion. The evidence cited in the majority opinion to support the Court's reliance on the "danger of imminent removal" provision of Ark. R. Crim. P. 13.2(c)(ii) is inadequate.

The fact that the affidavit was presented at 9:02 p.m. suggests nothing about the imminent removal of the drugs. Nor does the fact that drugs were purchased by the informant earlier that evening.

The fact that the drugs were contained in a clear plastic bag does not suggest imminent removal. The statement in the affidavit that "the evidence sought is packaged and maintained in a manner that its destruction or removal can be easily accom-

plished" is no less conclusory than the statement that "the residence is so situated that the approach of the officers serving this warrant can be readily detected."

The majority opinion suggests that anytime drugs are to be searched for officers can press a button on a word processor, spew out a wholly conclusory statement that drugs to be found can easily be removed and, if approved by the magistrate, conduct a nighttime search.

Even if it were proper for a magistrate to rely on a conclusion, the one discussed is irrelevant. While ease of removal may be related to the "danger of imminent removal," they clearly are not the same. "Imminence" has to do with time. It would, for example, be appropriate to invade a home at night if the magistrate were presented with information that preparation had been made by the suspect to remove drugs to another location or perhaps to destroy them soon because of fear of being caught with them. The fact that drugs can be, say, flushed down a toilet quickly is just as true in daylight as in darkness.

It is true that in *Harris* v. *State*, 262 Ark. 506, 558 S.W.2d 143 (1977), we seemingly approved a nighttime search on the basis of an officer's statement that evidence might be disposed of. The opinion does not, however, quote the language of the affidavit presented to the Court in that case.

Although the majority opinion does not refer to it, the State argues the conviction should be affirmed, regardless of deficiencies the affidavit may have had, because the officers were acting in good faith in executing the warrant. *United States* v. *Leon*, 468 U.S. 897 (1984). I cannot find good faith on an objective basis when officers use a computer print-out of an affidavit in conclusory form obviously intended to be used in virtually any drug search regardless of the facts necessary to justify the search pursuant to Rule 13.2(c). See *Abbott* v. *State*, 307 Ark. 278, 819 S.W.2d 694 (1991), in which we declined to apply the *Leon* balm to evidence obtained in a search resulting from a warrant which charged a nonexistent offense and was thus facially deficient.

Approval of the nighttime search in this case eviscerates the heightened requirement for nighttime invasion of people's homes in all future cases where an officer *concludes it would be easy* to dispose of the drugs; in other words, all drug search cases.

I respectfully dissent.