UNITED STATES of America, Appellee,

v.

**Michael Bruce MAHOLY, Appellant.**

No. 92–3748.

United States Court of Appeals, Eighth Circuit.

Submitted April 15, 1993.

Decided Aug. 11, 1993.

---

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and KOPF,* District Judge.

WOLLMAN, Circuit Judge.

Michael Bruce Maholy moved to suppress evidence that police officers had seized during a nighttime search of his residence pursuant to a warrant. After a hearing, the district court[1] denied his motion. Reserving his right to appeal the district court's denial of his motion, Maholy conditionally pled guilty to one count of distributing marijuana, in violation of 21 U.S.C. § 841(a)(1); one count of possessing with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and one count of using a firearm during a drug-related offense, in violation of 18 U.S.C. § 924(c)(1). Maholy now appeals his convictions, and we affirm.

## I.

According to the facts stipulated by the parties at the suppression hearing, Arkansas State Police officers and a confidential informant drove from Little Rock to Mountain Home, Arkansas, on the evening of November 19, 1991. They were intending to locate Maholy's son so that they could purchase marijuana from him. When they could not locate the son, the officers had the informant call Maholy in order to ascertain the son's whereabouts. Maholy told the informant that his son had gone to Springfield, Missouri, but that he, the father, could provide them with whatever they needed. In accordance with the officers' directions, the informant made a deal with Maholy to buy ten pounds of marijuana for $2,600.

The officers and the informant returned to Little Rock at approximately 12:30 a.m. on November 20th, at which time the informant made a controlled buy from Maholy at Maholy's residence. Arkansas State Police Investigator Allen Swint, who had accompanied the informant to Maholy's residence, field-tested a portion of the green vegetable matter that the informant had obtained from

L. Gene Worsham, Little Rock, AR, argued, for appellant.

Linda Lipe, Asst. U.S. Atty., Little Rock, AR, argued, for appellee.

* The HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

1. The Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

Maholy and received a positive reaction for marijuana. The informant also told Swint that Maholy had additional quantities of marijuana at the residence.

While other officers continued their surveillance of the Maholy residence, Swint left the scene to obtain a search warrant. He prepared an affidavit to support his application for the warrant. Swint included the following facts in the affidavit:

1) that a reliable confidential informant, who had provided reliable information on two past occasions, had told Swint that Maholy was in possession of and was distributing marijuana from his residence;

2) that the informant had executed a controlled buy from Maholy which had yielded seven clear plastic bags of green vegetable matter, determined by field-testing to be marijuana;

3) that the Arkansas State Police had on file a report stating that Maholy was involved in narcotics trafficking in the Little Rock area;

4) that the Arkansas State Police had on file a report stating that narcotics were being sold from 6000 East Roosevelt Road in Little Rock, which was Maholy's address;

5) that he, Swint, had personally been to the residence and would assist in the execution of the search warrant; and

6) that "the residence is so situated that the approach of the officers serving the search and seizure warrant can be readily detected."

Swint took the affidavit to the home of a Little Rock municipal court judge, before whom Swint swore to and signed the affidavit. Finding probable cause to believe that marijuana was present at Maholy's residence, the judge issued the search warrant at approximately 2:00 a.m. on November 20th. Further finding that the safety of the officers executing the warrant would be jeopardized because their approach would be readily apparent to persons in and around the residence, the judge authorized the police to execute the search warrant at any time of the day or night.

The officers executed the warrant at approximately 2:30 a.m. Between the time of the controlled buy at approximately 12:30 a.m. and the execution of the warrant two hours later, the residence had remained fully lit and no one had entered or left. In order to avoid early detection and the accompanying danger, the officers approached the residence on foot by walking across 100 yards of muddy field. The search of the residence revealed a large quantity of marijuana and six firearms. Maholy and his wife were arrested.

Charges were originally brought in Arkansas state court, but they were subsequently dismissed. Maholy and his wife were then indicted by a federal grand jury. They moved the district court to suppress the fruits of the November 20th search on the ground that the affidavit for the warrant had failed to establish probable cause for the issuance of a nighttime warrant. After the district court denied the motion to suppress, Maholy entered a conditional guilty plea.[2] The district court sentenced him to concurrent terms of 30 months' imprisonment on the two substantive drug counts and a consecutive term of 60 months' imprisonment on the firearms count.

## II.

In reviewing the grant or denial of a motion to suppress evidence on Fourth Amendment grounds, we are bound by the district court's findings of fact regarding the circumstances of the search unless we believe on the basis of the record as a whole that the district court clearly erred. *See United States v. McBride*, 801 F.2d 1045, 1046 (8th Cir.1986), *cert. denied*, 479 U.S. 1100, 107 S.Ct. 1325, 94 L.Ed.2d 177 (1987); *see also United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir.1989). We may reverse the district court's ultimate ruling on the suppression motion, however, if the ruling reflects an erroneous view of the applicable law. *Id.*

Maholy initially argues that the district court erred by not applying the Arkansas Rules of Criminal Procedure to suppress the

2. Maholy's wife did not plead guilty, and the charges against her were subsequently dismissed.

fruits of the November 20th search. He contends that the affidavit for the search warrant failed to set forth sufficient facts to justify the issuance of a nighttime search warrant under Arkansas Rule of Criminal Procedure 13.2(c).[3] He notes that the search warrant was applied for, issued, and executed solely by state officers and that there was no involvement by federal officers until the federal prosecution was initiated by the return of a federal indictment. He acknowledges that from the time of the indictment forward, the case proceeded solely on the federal level.

In determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated. *Cf. United States v. Eng,* 753 F.2d 683, 686 (8th Cir. 1985) (federal court need not suppress evidence obtained by state officers in violation of a state statute); *United States v. Montgomery,* 708 F.2d 343, 344 (8th Cir.1983) (same). When evidence obtained by state law enforcement officers is offered in a federal prosecution, "the legality of [the] search and seizure is not determined by reference to a state statute, but rather is resolved by fourth amendment analysis." *United States v. Tate,* 821 F.2d 1328, 1330 (8th Cir.1987) (citing *Cooper v. California,* 386 U.S. 58, 61, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967)), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662 (1988); *see also Elkins v. Unit-*

*ed States,* 364 U.S. 206, 223, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960); *United States v. Keene,* 915 F.2d 1164, 1167 (8th Cir.1990), *cert. denied,* 498 U.S. 1102, 111 S.Ct. 1001, 112 L.Ed.2d 1084 (1991). We have held that "the question '[w]hether evidence obtained by state officers and used against a defendant in a federal trial was obtained by an unreasonable search and seizure is to be judged as if the search and seizure had been made by federal officers.'" *Tate,* 821 F.2d at 1330 (quoting *United States v. Ross,* 713 F.2d 389, 393 n. 7 (8th Cir.1983)); *see also Montgomery,* 708 F.2d at 344; *accord, United States v. Pforzheimer,* 826 F.2d 200, 203 (2d Cir.1987). Thus, Maholy's claim that the November 20th nighttime search violated Arkansas Rule 13.2(c) is irrelevant to determining, at least in the first instance, whether the fruits of the search are admissible in federal court.[4]

Turning to the Fourth Amendment analysis, Maholy argues that the nighttime search of his residence violated the Fourth Amendment because Swint's affidavit provided insufficient justification to support the issuance of a nighttime search warrant.[5] We need not reach the question whether the nighttime authorization in the warrant was in fact reasonable under the Fourth Amendment because we find that even if the nighttime search violated the Fourth Amendment, the fruits of the search were admissible under *United States v. Leon,* 468 U.S. 897, 920–

---

3. Arkansas Rule of Criminal Procedure 13.2(c) provides in pertinent part:

   Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m..... Upon a finding by the issuing judicial officer of reasonable cause to believe that:
   (i) the place to be searched is difficult of speedy access; or
   (ii) the objects to be seized are in danger of imminent removal; or
   (iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy;
   the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night....

4. Maholy also argues that if we decline to hold that the search violated Ark.R.Crim.P. 13.2(c), we should hold that the search violated Federal

Rule of Criminal Procedure 41(c)(1), which states that search warrants shall be served in the daytime, unless the issuing authority, for reasonable cause shown, authorizes its execution at nighttime. We decline to apply Fed.R.Crim.P. 41(c)(1), however, to a search conducted entirely by state officers. *See United States v. McCain,* 677 F.2d 657, 662 (8th Cir.1982) (declining to apply Rule 41 unless the defendant/appellant could show sufficient federal involvement in the search to justify invoking the "participation doctrine"); *cf. United States v. Moore,* 956 F.2d 843, 847 (8th Cir.1992) (declining to apply the federal no-knock requirement of 18 U.S.C. § 3109 to a search conducted entirely by state officers).

5. Maholy does not contend that Swint's affidavit lacked sufficient facts to support a finding of probable cause to believe that controlled substances were present at his residence. He challenges only the search warrant's authorization for the search to be conducted at night.

21, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984).

In *Leon,* the Supreme Court held that evidence obtained pursuant to an ultimately invalidated search warrant should not be excluded where the officers executed the warrant with an objectively reasonable good faith reliance on the issuing judicial officer's determination of probable cause. 468 U.S. at 922, 104 S.Ct. at 3420; *see also United States v. Simpkins,* 914 F.2d 1054, 1057 (8th Cir. 1990), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 997, 112 L.Ed.2d 1081 (1991); *United States v. White,* 890 F.2d 1413, 1419 (8th Cir.1989), *cert. denied,* 498 U.S. 825, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990). The Court recognized four situations in which the executing officers could not reasonably rely on the warrant and suppression therefore remained an appropriate remedy: (1) where the issuing judicial officer was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing officer "wholly abandoned his judicial role;" (3) where the affidavit supporting the warrant contained so few indicia of probable cause "as to render official belief in its existence entirely unreasonable;" and (4) where the warrant itself is so facially deficient that no executing officer could reasonably presume it to be valid. *Leon,* 468 U.S. at 923, 104 S.Ct. at 3420 (citations omitted); *see also Simpkins,* 914 F.2d at 1057.

■ We recently addressed a similar issue in *United States v. Moore,* 956 F.2d 843 (8th Cir.1992). In *Moore,* we held that evidence seized by state officers pursuant to a warrant arguably issued without adequate cause to justify authorizing a no-knock entry need not be suppressed where the officers relied in good faith on the issuing judicial officer's determination. *Id.* at 851. In assessing whether the state officers had acted in good faith, we looked to whether the officers had complied with state law and the Fourth Amendment or "had an objectively reasonable basis to believe they were complying with [state] law and the Fourth Amendment." *Id.* at 848. Thus, although state law is irrelevant for determining in the first instance whether fruits of a search are admissible in federal court under the Fourth Amendment, state law is relevant when the analysis proceeds to the question of admitting unconstitutionally seized evidence under *Leon's* good faith exception to the exclusionary rule.

Maholy argues that the government may not rely on *Leon* because no Arkansas law enforcement official could have held an objectively reasonable belief that he was complying with Arkansas Rule of Criminal Procedure 13.2(c) as interpreted by the Arkansas Supreme Court. Although the question is a close one, we cannot say that the Arkansas municipal judge so clearly erred in applying Arkansas's rules of criminal procedure that the executing officers' reliance on his determination was entirely unreasonable.

At the time of the November 20th search, the Arkansas Supreme Court had decided three cases interpreting Rule 13.2(c), quoted above, to require that the applying officer's affidavit include sufficient facts showing reasonable cause to believe that circumstances exist supporting one of the rule's three justifications for a nighttime search. *See State v. Martinez,* 811 S.W.2d 319, 320 (Ark.1991); *Hall v. State,* 789 S.W.2d 456, 458 (Ark.1990); *State v. Broadway,* 269 Ark. 215, 599 S.W.2d 721, 723 (1980). This line of authority stemmed from the court's caution in *Broadway* that affidavits for nighttime search warrants "should speak in factual and not mere conclusory language." 599 S.W.2d at 723.

What constitutes a fact and what constitutes an opinion or conclusion is, of course, a matter often open to debate. We think that none of the three cited cases discussing the requirements for a nighttime search warrant clearly told Swint or the officers executing the search warrant that the affidavit was obviously inadequate.

Unlike the nighttime warrant for Maholy's residence, which was based on the safety of the executing officers, all three of the earlier cases dealt with affidavits attempting to show that potential evidence was in danger of imminent removal, the second of Rule 13.2(c)'s three justifications for issuing a nighttime search warrant. In *Broadway,* the affidavit recited merely that a controlled buy had occurred at the residence to be searched on

the previous day and contained mistakenly inserted language commanding the affiant to search the property at any time of the day or night. 599 S.W.2d at 722–23. The Arkansas Supreme Court held that the conclusory commanding language did not show how any drugs allegedly present at the defendant's residence were in danger of imminent removal. *Id.* at 723–24.

In *Hall*, the affidavit stated only that illegal drugs were present at the residence and that a confidential informant had purchased marijuana at the residence within the previous seventy-two hours. 789 S.W.2d at 458. Additional sworn oral testimony had been given to the issuing judicial officer at his residence, but because it had not been recorded, it could not add to the affidavit's showing. *Id.* The Arkansas Supreme Court held that the affidavit's averments failed to "give reasonable cause to believe the drugs would be disposed of, removed, or hidden before the next morning," *id.* at 458, and therefore ordered that the fruits of the nighttime search be suppressed. *Id.* at 459.

In *Martinez*, the affidavit stated that it was believed that Martinez stored controlled substances at his residence and that arrangements had been made to purchase a controlled substance at the residence on that day. 811 S.W.2d at 320. Once again, the Arkansas Supreme Court held that it was error for the nighttime search warrant to have been issued because "[t]he affidavit [was] silent with respect to anything regarding reasonable cause to believe the marijuana would be destroyed or removed before the next morning." *Id.* at 321.

We believe that Swint's affidavit went beyond those involved in *Broadway, Hall,* and *Martinez.* Swint's affidavit stated that he had participated in a controlled buy prior to the time of the application, that he had personally been to the premises, and that the residence was so situated that persons in or around the residence could easily notice anyone's approach. We believe these statements are sufficiently factual in nature and sufficiently support a finding that the warrant could be safely executed only at nighttime so that the officers serving the warrant could rely in good faith on the issuing judge's authorization of a nighttime search under Rule 13.2(c)(iii).

Maholy argues, however, that the Arkansas Supreme Court has subsequently decided a case in which it found that the language used in the Swint affidavit ("the residence is so situated that the approach of the officers serving the search and seizure warrant can be readily detected") was insufficient to support a finding of reasonable cause to justify a nighttime search. *Coleman v. State,* 308 Ark. 631, 826 S.W.2d 273, 275 (1992). Had *Coleman* been decided prior to the search of Maholy's residence, we might well have agreed with the argument that neither Swint nor the other officers executing the warrant could have held an objectively reasonable belief that the affidavit supported the issuance of a nighttime warrant under Rule 13.2(c). *Coleman* was decided after the search at issue here, however. Thus, it does not taint the good faith of the officers in this case.

Accordingly, we find that the district court did not clearly err in finding that the officers held an objectively reasonable belief that they were complying with Arkansas law and the Fourth Amendment when they searched Maholy's residence pursuant to the nighttime search warrant. Therefore, the judgment of the district court is affirmed.