# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-1109

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota |
| Melvin Dewayne Lockett, | * | |
| | * | |
| Defendant-Appellant. | * | |

———————

Submitted: November 16, 2004
Filed: January 7, 2005

———————

Before MURPHY, HANSEN and MELLOY, Circuit Judges.

———————

MURPHY, Circuit Judge.

Melvin Dewayne Lockett was convicted by a jury of being an armed career criminal in possession of a firearm and of possessing an unregistered firearm, and he was sentenced by the district court[1] to 262 months. Lockett appeals, arguing that the district court erred in admitting inculpatory statements obtained in violation of his Miranda rights and that there was insufficient evidence to prove he possessed a firearm. We affirm.

---

[1]The Honorable Judge David S. Doty, United States District Judge for the District of Minnesota.

Lockett got into an argument with one of the bartenders at Reaney's Bar on the evening of August 30, 2002. He left, but threatened to come back with a weapon and "blow...off" heads. Lockett returned after the bar had closed, beat on the locked door, and made threats. He kept on pounding until the bouncer and a customer opened the door and confronted him. When the customer jumped on top of him, he discovered that Lockett was carrying a sawed off shotgun. The two took the shotgun away and went back inside, where they sat around and had a drink with the bartenders and talked "about what to do." After awhile they left for the bouncer's home and decided to call the police. Since the bouncer was a convicted felon just released from jail who did not want to get involved with law enforcement, they made the call from outdoors. When officers responded, a bartender and the customer turned over the shotgun and described the suspect they knew as "Melvin."

A week later, two officers saw Lockett in the vicinity of the bar and observed that he looked like the suspect described by the witnesses. They went up to him, introduced themselves as police officers, and asked to speak with him. Lockett told the officers his name and address. They asked Lockett to sit in the back of their squad car while they waited for a witness to come for a possible identification. Lockett was not handcuffed and the car door was left open while they waited. Lockett was neither placed under arrest nor given Miranda warnings.

Once in the squad car, Lockett volunteered some incriminating statements. First, Lockett asked if this was all "about that shotgun thing last week?" The officers responded that they were investigating alleged threats and were waiting for a positive identification. Lockett kept talking without questioning from the officers. He asked them "what would you do," and commented that "I am not going to deny it; I had a gun because they all had guns." When the witness arrived, Lockett was identified as being the man who had the shotgun at the bar, but the officers released him on the instructions of their sergeant.

Later that day the police received a complaint from employees at Reaney's Bar that Melvin had made additional threats. Officers were dispatched to Lockett's apartment to arrest him, but he was not there so they waited. When he came home, he asked why they were in his apartment. The officers stated that they were looking for Melvin Lockett and asked that he identify himself. He did and was then arrested. While he was being handcuffed and without further questioning, Lockett told the officers: "You ain't smart enough to find my guns. I'm a felon." Lockett was identified by a witness to the shotgun incident and transported to police headquarters where he asked an officer why he had been arrested. The officer told him he had been arrested for terroristic threats, and Lockett replied: "How can I be arrested for terroristic threats? They took my gun last week. People in the bar got my gun." No Miranda rights had been given to him up to this point.

A grand jury indicted Lockett for being an armed career criminal in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e), and for possessing an unregistered firearm, in violation of 26 U.S.C. § 5861(d). Prior to trial, Lockett moved to suppress the incriminating statements he had made in the squad car, at his apartment, and at police headquarters, contending that they were all the product of custodial interrogation conducted without his receiving Miranda rights. After an evidentiary hearing, a magistrate judge[2] issued a Report and Recommendation recommending that his motion be denied. The magistrate found that Lockett was not in custody when he made his statements in the squad car and that all of Lockett's statements were voluntary. Lockett filed no objection, and the district court adopted the magistrate's findings and recommendation and denied his motion to suppress. The case proceeded to trial, and the jury returned guilty verdicts on both counts. Lockett was sentenced to concurrent terms of 262 months imprisonment for being an armed career criminal in possession of a firearm and 120 months for possessing an unregistered firearm. He appeals.

---

[2]The Honorable Janie S. Mayeron, United States Magistrate Judge for the District of Minnesota.

Lockett first argues that the district court erred in denying his motion to suppress his incriminating statements because they were the product of custodial interrogation in violation of Miranda v. Arizona, 384 U.S. 436 (1966). The government contends that all of Lockett's statements were voluntarily made. The government also argues that Lockett was not in custody while seated in the squad car during his first meeting with the police. Since Lockett filed no objection to the magistrate's report and recommendation, we review the findings of fact underlying his appeal for plain error and the admissibility of his statements de novo. United States v. Collins, 321 F.3d 691, 694 (8th Cir. 2003).

Under Miranda, the government is prohibited from using statements made during custodial interrogation unless the defendant has been previously advised of his Fifth Amendment privilege against compulsory self incrimination and right to an attorney. Id. at 444. Because "[v]olunteered statements of any kind are not barred by the Fifth Amendment," Miranda concerns do not arise in the absence of police interrogation, however. Id. at 478. Interrogation is not limited to "express questioning," for it also includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Interrogation does not generally include "routine processing-type questions" such as the name and address of a suspect. United States v. Reyes, 908 F.2d 281, 287 (8th Cir. 1990).

Here, none of Lockett's contested statements was the product of police interrogation. Lockett's comments while seated in the squad car were not made in response to police questioning. Lockett characterizes as "unbelievable" the officer's assertion that no questions were posed while he was seated in the vehicle, but he introduced no testimony to the contrary. The magistrate's finding that the officer's testimony was believable is deserving of deference. See United States v. Martin, 28 F.3d 742, 745-46 (8th Cir. 1994) (magistrate's determination of witness credibility "'virtually unreviewable on appeal'") (quoting United States v. Candie, 974 F.2d 61,

64 (8th Cir. 1992)). Lockett's suggestion that the officer effectively interrogated him by noting that the police were investigating alleged threats is not persuasive, for the officer's remark came in response to Lockett's inquiries about the investigation and was part of a conversation "normally attendant to arrest and custody." See Innis, 446 U.S. at 301; United States v. Henderson, 770 F.2d 724, 728 (8th Cir. 1984) (postal inspector's responses to suspect's questions about the charges against him were routine conversation, not interrogation). Lockett's statements in the squad car were voluntarily made, and their admission was not in violation of Miranda.

The contested statements made by Lockett at the time of his arrest and at police headquarters were also voluntary. Lockett again characterizes as unbelievable the arresting officer's assertion that no questions were asked of Lockett during this period, but he offers no testimony to the contrary. The magistrate's determination of the officer's credibility is entitled to deference. See Martin, 28 F.3d at 745-46. Lockett also asserts that the police engaged in the functional equivalent of interrogation by stating that they were "looking for" him when he asked why they were in his apartment, and by explaining that he was suspected of making terroristic threats when asked why he was being arrested. The officers had no reason to believe that these statements would elicit incriminating responses from Lockett. The statements were instead responses to Lockett's own inquiries and thus part of a conversation "normally attendant to arrest and custody." See Innis, 446 U.S. at 301; Henderson, 770 F.2d at 728. Lockett's statements were voluntarily made, not the products of police interrogation. The district court did not therefore err in admitting them, despite the officers' failure to administer the Miranda warnings.

Lockett argues, finally, that the government failed to introduce evidence sufficient to support a jury finding that he possessed a weapon beyond a reasonable doubt. In support of his argument, Lockett cites disagreement among witnesses concerning the precise timing of the events at the bar and asserts that, as a result of the discrepancies, their testimony cannot be believed. In reply, the government

contends that far more evidence than necessary was introduced, and that the determination of witness credibility is not the province of this court but of the jury.

In considering the sufficiency of the evidence underlying a jury verdict, the scope of our review is quite limited. A conviction will be reversed on insufficiency grounds only if, "after viewing the evidence in the light most favorable to the jury's verdict, giving the government the benefit of all reasonable inferences that may be drawn from the evidence, no construction of the evidence will support the jury's verdict." United States v. Hollingsworth, 257 F.3d 871, 878 (8th Cir. 2001), cert. denied, 534 U.S. 1100 (2002). So long as a reasonable jury could have found the defendant guilty beyond a reasonable doubt, a conviction may not be overturned. United States v. Medearis, 380 F.3d 1049, 1060 (8th Cir. 2004).

Lockett has not demonstrated that a reasonable jury must have entertained a reasonable doubt as to his possession of the sawed off shotgun. Three witnesses testified to the removal of the gun from Lockett, and four officers testified to Lockett's various admissions of gun possession. We are not in the best position to judge the credibility of these witnesses, and here the finder of fact was a jury. See United States v. Hill, 249 F.3d 707, 714 (8th Cir. 2001) ("Witness credibility is within the province of the jury, which we are not allowed to review."). The district court did not err in denying Lockett's motion for judgment of acquittal on the basis of insufficient evidence.

For these reasons the judgment of the district court is affirmed.

_____