# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3943

_____

United States of America,        *
            *
      Appellee,         *
            *   Appeal from the United States
   v.               *   District Court for the
            *   District of Nebraska.
James A. Howard,          *
            *
      Appellant.        *

_____

Submitted: March 27, 2008
Filed: July 11, 2008

_____

Before RILEY, BEAM, and MELLOY, Circuit Judges.

_____

RILEY, Circuit Judge.

James A. Howard (Howard) entered a conditional guilty plea to conspiracy to distribute, and possession with intent to distribute, cocaine base; possession of a firearm during commission of a drug trafficking crime; and forfeitures. Through a previous motion in limine, Howard asked the district court[1] to suppress various statements and other evidence, and sought a Franks[2] hearing. The district court denied

_____

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

[2]Franks v. Delaware, 438 U.S. 154 (1978).

the request for a Franks hearing and declined to suppress any of the statements or evidence Howard sought to exclude. Howard appeals these determinations. We affirm.

## I.    BACKGROUND[3]

Officer Eugene Watson (Officer Watson), a detective with the Omaha Police Department Gang Intelligence Unit, knew Howard through previous arrests. On May 8, 2006, Officer Watson observed Howard commit a traffic violation while driving a vehicle and making a turn without signaling. Officer Watson stopped the vehicle and observed a red bottle with a white cap sticking partially out of Howard's front pants pocket. Officer Watson recognized the bottle as a bottle of "lean," which is a street name for codeine cough syrup containing a controlled narcotic. Officer Watson asked Howard if the bottle was "lean" and Howard stated it was. Howard was placed under arrest. Officer Watson searched Howard incident to the arrest and found marijuana on Howard. During transport to the central booking station, the officers did not ask Howard any questions, but the officers did tell Howard the officers had been in the area because of complaints about gang activity and shots being fired. Howard told Officer Watson that he (Howard) just smokes "weed" and drinks "lean." Howard had not yet been advised of his Miranda[4] rights.

On May 15, 2006, Officer Joseph Baudler (Officer Baudler) executed two search warrants on an apartment building. The search warrants were for two of the

---

[3]The parties provide few record citations, and many facts discussed by the parties are not in the record on appeal. The parties do not disagree on most of the material facts and primarily debate differing legal conclusions. To the extent factual disagreement exists, such as whether warrant affidavits were sufficiently specific, we obtained the relevant factual evidence from the district court record. We primarily rely on the thorough, detailed report and recommendation of Magistrate Judge Thomas D. Thalken, adopted in its entirety by the district court.

[4]Miranda v. Arizona, 384 U.S. 436 (1966).

four apartments, an upstairs apartment and the main floor apartment. During the execution of the search warrants, one person was located in the upstairs apartment and thirteen people were in the main floor apartment, including Howard. Howard was placed under arrest and advised of his <u>Miranda</u> rights. Howard did not appear intoxicated. Howard appeared to understand the questions posed to him, and he responded appropriately. The officers, without any coercion or promises, questioned Howard. Howard possessed crack cocaine and explained the crack cocaine was for his personal use. Howard stated he lived at an address on Seward Street and denied he lived in the main floor apartment. Howard made no claim to any other portion of the building. Officers asked Howard why he had a bandage on his leg. Howard answered he had a rash on his leg from sleeping on a cot in the main floor apartment where he was arrested. Howard had a key to the main floor apartment, but did not have a key to the basement door.

Officer Baudler received information from a person identifying himself as the apartment manager that no one was living in the basement and no one should be there. The basement was accessible by a door located in a common stairwell, and the basement door was locked. The manager reported his only basement key had been stolen. After officers forced open the basement door, Officer Baudler searched the basement area of the apartment. The basement contained a washer, dryer and furnace area which appeared to be a common area for the other apartments. Officers found stolen weapons, ammunition, bottles of codeine, digital scales and plastic bags containing crack cocaine in the ceiling above the washer/dryer area. The basement also had two open and unoccupied rooms under construction.

On June 15, 2006, while on patrol in the same general area, Officer Baudler observed Howard standing on the porch of a building. Upon seeing the officers, Howard fled into an apartment in the building. The officers followed and knocked at the door of the apartment. A man opened the door and the officers saw Howard sitting on a sofa. The officers placed Howard under arrest for previously selling crack

cocaine to a confidential informant. Officer Baudler had been involved with the prior controlled buy. Howard was searched, and the officers discovered marijuana on Howard.

On July 2, 2006, Officer Baudler conducted a traffic stop after observing a vehicle roll through a red light, making a right turn. Officer Baudler did not recognize Howard until after the vehicle was stopped. Officer Baudler observed what appeared to be small white crumbs of crack cocaine on the passenger seat. The substance field-tested positive for crack cocaine. Officer Baudler placed Howard under arrest and advised Howard of his Miranda rights. At booking, in response to questioning, Howard admitted three days earlier he had smoked "primo," which is a mixture of crack cocaine and marijuana. Howard did not appear intoxicated, appeared to understand the questions posed to him and responded appropriately. Officer Baudler made no promises or threats to induce Howard's comments.

## II. DISCUSSION

On suppression issues, "[we] review[] a district court's factual findings for clear error and its legal conclusions de novo." United States v. Williams, 431 F.3d 1115, 1117 (8th Cir. 2005). However, extra deference is generally afforded to the district court's determination regarding a motion to suppress. See United States v. Vega-Rico, 417 F.3d 976, 979 (8th Cir. 2005) (explaining this court will affirm the denial of a motion to suppress "unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." (internal quotation marks and citations omitted)).

Probable cause for an arrest or seizure exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances,

and resolution of the question by an issuing judge should be paid great deference by reviewing courts." United States v. Grant, 490 F.3d 627, 631 (8th Cir. 2007) (quoting and citing Gates, 462 U.S. at 236, 238 (internal quotation marks and citation omitted)).

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (quotation marks and citation omitted). In determining the voluntariness of a confession, we examine the totality of the circumstances. Id. "We review the district court's findings of fact for clear error and its legal conclusion as to whether a confession was voluntary de novo." Id. (citation omitted).

### A. Probable Cause

Howard first contends "the [search warrant] affidavits for the main floor and the upstairs apartments were largely based upon the speculative word of an informant . . . [and] [t]he reliability of the informant is unsubstantiated in the affidavit and, as a consequence . . . was insufficient to justify a finding of probable cause." The district court found differently, concluding, "the affidavit contains averments of the informant[']s past reliability and independent corroboration of some of the information. Accordingly, the reliability of the informant was established and supports the finding of probable cause." The district court reasoned, "statements of a reliable confidential informant are themselves sufficient to support probable cause." (citing United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998)). Upon independent review of the affidavits, the district court's determination is fully supported. The affidavits indicated the confidential informant "ha[d] in the past provided information which ha[d] proven to be both reliable and accurate," and "ha[d] been utilized by the Omaha Police Gang Unit in making purchases of illegal narcotics, specifically crack cocaine, under the control and supervision of affiant officers." The affidavit further explained the confidential informant was "not on any terms of parole,

-5-

probation, or work release" at the time of the warrant application. Howard's argument, therefore, is without merit. See United States v. Williams, 477 F.3d 554, 559-60 (8th Cir. 2007) (clarifying that information from a confidential informant may be sufficient to support a finding of probable cause if the informant has a history of providing reliable information, or if the information is at least partly corroborated, even if the informant's criminal history is not provided to the magistrate issuing the warrant).

Howard also complains the affidavits contained information Howard had been previously arrested for illegal possession of a controlled substance, but failed to indicate the controlled substance was cough syrup. Howard cites no authority, and we have found none, indicating the failure to specify the controlled substance at issue in a prior arrest would undercut a finding of probable cause. Howard minimizes his possession. The district court found the codeine cough syrup at issue was actually lean, a commonly abused controlled narcotic. Given the "great deference" owed to the issuing judge, see Gates, 462 U.S. at 236, we affirm the district court.[5]

### B. Basement

Howard next contends the district court should have suppressed any items found in the basement because "[n]either warrant authorized officers to search the

---

[5]Howard also contends, without citation to authority, the affidavit's reliance on information that one of the occupants at the residence had a warrant for violation of probation and was convicted of possession of a controlled substance on December 7, 2004, was improper because this information was stale. Although evidence of a one-and-a-half year old conviction, standing alone, might be considered stale, the existence of probable cause in an affidavit is judged by the totality of the circumstances. See Gates, 462 U.S. at 238; Grant, 490 F.3d at 631. The affidavit included significant additional information, including information that a confidential informant had observed Howard selling crack cocaine to a customer in the apartment no more than 72 hours before the application for the warrant. The totality of the circumstances supports a finding of probable cause. See id.

basement." Although the warrants did not provide authority to search the basement, the district court found Howard did not have standing to object to any search of the basement area. Howard's opening brief challenges the district court's determination on standing in the summary of the argument, but Howard failed to support this conclusion with any argument, facts, reasoning, or citation to authority. Howard's challenge to the district court's finding is thus waived. See Fed. R. App. P. 28(a)(9)(A) (stating an appellant's argument "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.").

## C. Nighttime Search

Howard next contends a search warrant "shall direct that it be served in the daytime unless the magistrate or judge is satisfied that the public interest requires that it should not be so restricted, in which case the warrant may direct that it may be served at any time." (quoting Neb. Rev. Stat. § 29-814.04). "[T]he affidavit in support of a search warrant must contain facts which show the reviewing judicial officer that the public interest requires nighttime service." State v. Fitch, 582 N.W.2d 342, 347 (Neb. 1998).

Howard's contention fails to recognize that "[i]n determining whether evidence obtained solely by state officers is admissible in federal court in the first instance, it is usually irrelevant whether a state rule of criminal procedure was violated." United States v. Maholy, 1 F.3d 718, 721 (8th Cir. 1993) (citation omitted). "When evidence obtained by state law enforcement officers is offered in a federal prosecution, the legality of the search and seizure is not determined by reference to a state statute, but rather is resolved by [F]ourth [A]mendment analysis." Id. (internal quotation marks, alteration, and citations omitted). Thus, whether the warrant for a nighttime search violated Nebraska law is irrelevant to Howard's federal rights under the Fourth Amendment.

-7-

Under a Fourth Amendment analysis, the nighttime search was sufficiently justified by the warrant. Howard asserts, "None of the evidence . . . provided in the affidavits contain facts which show the reviewing judicial officer that the public interest requires nighttime service." An independent review of the affidavit, however, reveals it delineates a nighttime search was warranted "because the [confidential informant] advises that the illegal activity occurs during all hours of the night. Affiant officer's surveillance also was conducted during the night-time hours when traffic was observed, which corroborates the information provided by the [confidential informant]." Given the significant deference owed to the issuing judge, we uphold the affidavit as providing adequate probable cause justifying the timing of the search.

## D.     Franks

Under Franks, if Howard had met his "burden of proving by a preponderance of the evidence that the affiants knowingly, intentionally, or recklessly included false statements in the affidavits . . . [he] would have been entitled to have the court set aside those statements and then review the remaining portions of the affidavits to see if what remained was sufficient to establish probable cause." United States v. Garcia, 785 F.2d 214, 222 (8th Cir. 1986).

Howard contends the affiant officers included false or misleading statements in the affidavits. Howard again complains the affidavits did not delineate his past arrest for a controlled substance was for cough syrup. For the reasons outlined in section II(A), this contention is without merit. Howard also again contends the affidavits contained stale information, which was not stale as to Howard. Even if the information were stale, staleness here does not support any falsity or intent to mislead. Finally, Howard contends the affidavits list two separate persons as controlling the same property. Again, this does not indicate any bad faith on the part of the affiants, but could simply be indicative of joint control, or the product of mistake. Howard bears the burden of demonstrating bad faith. See Garcia, 785 F.2d at 222. The district court properly determined, "Even if one assumes, *arguendo*, the information complained of is false or misleading, there is no evidence presented by Howard to

-8-

show the officers knew about the inaccuracy or intentionally or recklessly omitted information from the affidavit for the search warrants." Howard points to nothing in the record sufficient to meet his burden.

### E. Statements

Howard contends many of his statements should have been suppressed because they were involuntary.

#### 1. May 8, 2006 Statement

On May 8, 2006, Howard was pulled over for failing to signal a turn. The police officer noticed a red bottle with a white cap sticking partially out of Howard's front pants pocket, and the officer recognized this as likely being a bottle of lean. The officer asked Howard if it was lean, and Howard stated it was. Howard contends this statement should have been suppressed because he had not been advised of his Miranda rights.

Howard admits, "In order for a Defendant's *Miranda* rights to apply the individual must be in custody and being interrogated." This, of course, is true. See United States v. Chamberlain, 163 F.3d 499, 502 (8th Cir. 1998). Miranda warnings are not required for "[g]eneral on-the-scene questioning as to facts surrounding a crime," which does not present "the compelling atmosphere inherent in the process of in-custody interrogation." Miranda, 384 U.S. at 477-78. In Berkemer v. McCarty, 468 U.S. 420, 437-39 (1984), the Supreme Court clarified police need not provide Miranda warnings before roadside questioning pursuant to a routine traffic stop because such questioning does not constitute "custodial interrogation." The district court properly determined Howard was not in custody when stopped for a traffic violation and he admitted possession of lean.

Howard also claims statements he made post-arrest should have been suppressed. After the admission, Howard was placed in custody when the officers placed him under arrest and transported him to the central booking station. Howard

had not yet been read his <u>Miranda</u> rights. The officers told Howard they were in the area because of complaints about gang activity and shots being fired. Howard then told the officers he "just smokes 'weed' and drinks 'lean.'" The issue as to this statement, therefore, is whether the statement was induced by "interrogation," which includes "either express questioning or . . . any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response . . . ." <u>United States v. Koontz</u>, 143 F.3d 408, 411 (8th Cir. 1998) (quoting <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980)). The district court found there was no direct questioning. The district court also determined the officer's actions were not the functional equivalent of direct questioning, and were not reasonably likely to elicit an incriminating response. The record is unclear whether the police informed Howard why they were in the area because Howard asked, or if they did so on their own. Clearly, the former situation does not amount to the functional equivalent of direct questioning. <u>See</u> <u>United States v. Lockett</u>, 393 F.3d 834, 838 (8th Cir. 2005) (deciding there was no interrogation when an officer told the defendant the crime being investigated, when "the officer's remark came in response to [the defendant's] inquiries about the investigation and was part of a conversation 'normally attendant to arrest and custody.'" (quoting <u>Innis</u>, 446 U.S. at 301)). Even if the police informed Howard why they were in the area *without* having been asked, the police could not have reasonably expected this to elicit an incriminating response. In <u>United States v. Head</u>, 407 F.3d 925, 929 (8th Cir. 2005), an officer directly stated to a defendant in custody that he wanted "to talk to him about what had occurred that morning." Even such a statement, clearly indicating a desire to initiate a discussion about events surrounding the arrest, was found not to constitute interrogation. <u>Id.</u> Thus, the officers' action of simply informing Howard why they were in the area cannot be considered the functional equivalent of direct questioning, and the district court's denial of Howard's motion to suppress was proper.[6]

---

[6]Howard also claims his responses were involuntary. The factual circumstances surrounding these statements fall far short of more coercive situations which have

### 2. May 15, 2006 Statement

Howard contends his will was overborne and he was forced to make an involuntary statement on May 15, 2006. On that date, Howard was arrested and taken to a central booking station. He was given <u>Miranda</u> warnings, questioned, and strip-searched. During the search, the police noticed a bandage on his leg, and asked where that came from. Howard replied it was obtained from sleeping on a cot back at the apartment, which linked him to the apartment. The district court dismissed Howard's argument this inquiry represented a deceptive police tactic that tricked Howard into giving the information, finding the situation "does not provide any evidence Howard's will was overborne to induce statements about Howard's sleeping arrangements." Howard provides no evidence the police could have reasonably suspected he obtained the wound from sleeping in a bed in a particular location. There is not even a reasonable probability the police were trying to trick Howard into disclosing this particular information. Far more coercive situations have been found not to have overborne a defendant's will. <u>See</u> <u>United States v. Gallardo-Marquez</u>, 253 F.3d 1121, 1123 (8th Cir. 2001) (determining a statement was still voluntary when the arrestee was taken into custody at 6:30 in the morning by a "group of armed policemen," left unclothed for a period of time, was not allowed to get dressed, claimed his daughter saw him naked, and claimed the officers told him he was going to jail for life and suggested he cooperate to earn a reduced sentence).

### 3. July 2, 2006 Statements

Howard also claims the district court should have suppressed statements he made both before and after he was arrested on July 2, 2006. Howard's contention he was "detained and not free to leave when questioned at the scene," is, as previously discussed, incorrect as a matter of law. <u>See</u> <u>Berkemer</u>, 468 U.S. at 437-39. Howard

---

been found not to overcome a defendant's will. <u>See</u> <u>United States v. Gallardo-Marquez</u>, 253 F.3d 1121, 1123 (8th Cir. 2001).

was not entitled to suppression of any statements he made before his arrest at the traffic stop.

Howard also contends, "As to the statements at central [after his arrest], Mr. Howard indicated to officers he was high." Howard thus contends his statements were involuntary. Simply because Howard was under the influence of drugs does not automatically render his confession involuntary. See United States v. Casal, 915 F.2d 1225, 1229 (8th Cir. 1990). Rather, Howard must show his intoxication caused his will to be *overborne*. See id. In Casal, the defendant had not slept for five days and had recently used drugs. Yet, the court noted, because the arrestee "did not appear to be intoxicated and talked coherently" it was reasonable to find his statements voluntary. Id. Howard points to nothing in the record indicating his state of intoxication was so severe his will was overborne. The district court noted Howard was coherent and spoke in a manner which indicated he understood what was happening, and Howard had previous experience with law enforcement. Howard provides no basis for concluding these factual findings were clearly erroneous.

### F.     Reasonable Suspicion for the Traffic Stops
### 1.        February 26, 2006 Traffic Stop

Howard contends the officers lacked a basis for stopping him on February 26, 2006. Although Howard raised an objection to this particular stop in his motion to suppress, Howard withdrew his objections to the February 26, 2006 stop,[7] and the district court did not analyze this specific stop. Thus, this argument has not been properly preserved for appeal.

---

[7]The district court noted Howard had withdrawn "his motion to suppress with regard to a traffic stop which occurred on February 26, 2007." Given the parties' confusion regarding the years, the fact the district court earlier referenced the traffic stop as occurring on February 26, 2006, and the fact the motion to suppress was filed in January of 2007, we presume the district court intended to say February 26, 2006.

### 2.     May 8, 2006 Traffic Stop

Howard next argues the officers had no legal basis for stopping him on May 8, 2006.  The district court noted "[t]he government provided uncontroverted evidence during the hearing that Officer Watson observed Howard commit a traffic violation while driving a vehicle by making a turn without signaling his intent . . . ."  Howard proffers "Mr. Howard would argue that he did not turn without signaling," and the officer therefore lacked a valid basis for the stop.  This presents a credibility issue for the district court, see Lockett, 393 F.3d at 838, and the district court found the officer reasonably believed a traffic violation had occurred.  The district court committed no clear error.

### 3.     July 2, 2006 Traffic Stop

Howard also contends the officers had no legal basis for conducting a traffic stop on July 2, 2006.  The officer testified he observed Howard run a red light.  Again, Howard provides no evidence the district court clearly erred in finding the officer's testimony more credible than that of the witness claiming there was no traffic violation.  The district court again committed no clear error.

## G.     Probable Cause for Howard's June 15, 2006 Arrest

Howard finally contends the officers had no probable cause to arrest him on June 15, 2006.  The district court noted there was no valid warrant for Howard's arrest.  Howard's argument is premised on the conclusory statement, "There was no valid reason to detain or arrest Mr. Howard on this occasion."  The district court noted the officer had previously observed Howard selling crack cocaine to an informant.  Probable cause existed for the arrest.  The district court committed no error.

## III.   CONCLUSION

The district court properly denied Howard's motion to suppress in every respect.  The judgment of the district court is affirmed.

_____